# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| WABASH POWER EQUIPMENT, CO., and ) <br> NICKELSON INDUSTRIAL SERVICE, INC., ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BTU STATE LINE, LLC, ) <br> BTU SOLUTIONS, LLC, ) <br> BTU SOLUTIONS DE, LLC, and ) <br> STATE LINE ENERGY, LLC, ) <br> Defendants. ) | CAUSE NO. 2:13-CV-202-TLS-JEM |

## FINDINGS, REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE PURSUANT TO
## 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on a Defendants BTU State Line LLC's, BTU Solutions, LLC's, BTU Solutions DE LLC's, and State Line Energy, LLC's Motion to Dismiss Plaintiffs' Complaint [DE 15], filed by Defendants on July 29, 2013. Plaintiffs filed a response on August 29, 2013, and Defendants filed a reply on September 16, 2013.

On November 20, 2013, Judge Theresa L. Springmann entered an Order [DE 30] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court deny the Motion.

## BACKGROUND

Plaintiffs Wabash Power Equipment Co. and Nickelson Industrial Service, Inc., filed their Complaint on June 11, 2013. The allegations in the Complaint arise out of an auction of equipment

1

from the State Line Energy electric generating plant in Hammond, Indiana. Plaintiffs purchased items sold in the auction and allege that Defendants made material misrepresentations about the items, breaching express warranties, violating the Indiana Crime Victim's Relief Act, and committing fraud in the inducement.

## ANALYSIS

In the instant Motion, Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss named Defendants BTU State Line, LLC, BTU Solutions, LLC, and BTU Solutions DE, LLC, arguing that there is no jurisdiction over these defendants in the Northern District of Indiana. Defendants move pursuant to Rule 12(b)(6) to dismiss all Defendants, including State Line Energy, LLC, on the grounds that Plaintiffs have failed to state a plausible claim for relief against any of the defendants.

### I. Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal for lack of personal jurisdiction. "The plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). All factual disputes are resolved in favor of the plaintiff. *Id*. A federal district court may exercise personal jurisdiction over a defendant if a court of general jurisdiction of the state in which it sits would have such jurisdiction. Fed. R. Civ. P. 4(k)(1)(A). This Court, sitting in Indiana, turns to the Indiana Rules of Trial Procedure, which provide for personal jurisdiction "on any basis not inconsistent with the Constitution of this state or the United States." Ind. R. Tr. P. 4.4(A). Thus, Indiana permits the

exercise of personal jurisdiction to the full extent permitted by the Due Process clause of the United States Constitution. *See LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006).

To exercise personal jurisdiction over a defendant under the Due Process clause, the defendant must have "certain minimum contacts with [Indiana] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1946) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant "should reasonably anticipate being haled into court [in Indiana]," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), if it "purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A court may exercise either "specific" or "general" personal jurisdiction over a non-resident defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

Defendants argue that this Court lacks personal jurisdiction over BTU State Line, LLC, BTU Solutions DE, LLC, and BTU Solutions, LLC (collectively, the "BTU Defendants"). They argue that these defendants do not have minimum contacts with the Northern District of Indiana, nor do Plaintiffs' claims arise from these defendants' contacts with the forum state, and therefore the BTU Defendants are not subject to general or specific jurisdiction in this Court.

"A defendant is subject to general jurisdiction when it has 'continuous and systematic general business contacts' with the forum state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) (quoting *Helicopteros*, 466 U.S. 408, 415-16). In other words, for the exercise of general jurisdiction to be appropriate, contacts with Indiana "must be so extensive to be tantamount to [a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in *any* litigation arising out of *any*

3

transaction or occurrence taking place *anywhere* in the world." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). The Seventh Circuit Court of Appeals has identified three essential requirements for specific jurisdiction:

> (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed [it]s activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

Defendants argue that none of the BTU Defendants are subject to general jurisdiction in this district because they have not had continuous and systematic contacts with the State of Indiana since they do not conduct business in Indiana; own or use real property or assets in Indiana; do not supply or contract to supply goods, services, or materials to be furnished in Indiana; do not have bank accounts, employees, or offices in Indiana; and do not enter into contracts with entities or people in Indiana. Defendants argue that the BTU Defendants have not purposefully availed themselves of the privilege of conducting business in Indiana as none of the BTU Defendants own the power plant or contracted to sell any property from the plant, so the exercise of jurisdiction cannot comport with notions of justice. In support of their Motion, Defendants provide a declaration of Jared Rossi, a manager of each of the BTU Defendants.

Plaintiffs argue that BTU Solutions does business in Indiana: it owns and is decommissioning the shuttered electric plant in Hammond, and in service of the decommissioning solicited vendors and has employees and an office in Hammond. Plaintiffs attach several documents that they allege provide evidence of the contacts BTU Solutions has with Indiana. Plaintiffs also attach three affidavits: of Joe Smrz, president a company that did asbestos abatement at the State

4

Line Energy Plant; of Brad Rafferty, an employee of Wabash Power Equipment Company at the State Line Energy Plant; and of John Piatti, an employee of Nickelson Industrial Service, Inc., who oversaw dismantling work done at the State Line Energy Plant. All three men relate in their affidavits that Curtis Barkley was the project manager at the State Line Energy Plant, and that Barkley and other people that the affiants worked with at the plant, including Chris Below and Johnny Fjord, represented themselves as employees of "BTU Solutions" and gave the affiants business cards identifying their employer as "BTU Solutions" with an address of PO Box 31669 in Houston. Likewise, email correspondence to affiants regarding the work at the State Line Energy Plant identifies the senders as working for "BTU Solutions." A form Access Agreement to pre-qualify firms to do work at the "State Line Generating Station in Hammond Indiana" is attached to Mr. Piatti's affidavit. It lists State Line Energy, LLC, as the owner of the energy plant and requires qualification certification for removal of equipment to be delivered to Chris Below of "BTU Environment Services, LLC," with an address of PO Box 31668 in Houston.

In addition to the sworn affidavits, Plaintiff also attaches other documents they claim support their claims. Plaintiffs have attached screen shots from the website of "BTU Solutions Group." The site lists contact information for "BTU Solutions Group, LLC," including PO Box 31669 in Houston and a Chicago street address. In a list of its decommissioning projects, it includes "Stateline," a coal plant in Hammond, Indiana. Plaintiffs also attach a transcript of an earnings conference call from Dominion Resources CEO announcing that the company sold State Line Power Station to "BTU Solutions" and a newspaper article reporting Dominion's sale of the plant to "BTU Solutions of Sugar Land, Texas." Plaintiffs argue that the affidavits and other documents create a prima facie case that BTU Solutions is subject to both general and specific personal jurisdiction in Indiana.

5

In addition to their arguments that BTU Solutions purposefully directed its activities at Indiana through its purchase of and activities decommissioning the State Line Power Plant, Plaintiffs argue that exercising jurisdiction in Indiana comports with traditional notions of fair play and substantial justice because of BTU Solutions' decision to do business in the state. Plaintiffs also argue that their claims are based on injuries they received in connection with equipment being sold from the decommissioned power plant in Indiana. Among other allegations, Plaintiffs allege that Johnny Fjord, a member of both BTU Solutions, LLC, and BTU Solutions DE, LLC, itself the sole member of BTU State Line, LLC, personally made false representations to Plaintiffs at the State Line Energy Plant, representations that Plaintiffs relied on to their detriment.

Defendants argue that there is no such entity as "BTU Solutions" and none of the BTU Defendants own the power plant or contracted to sell any property from the plant. Defendants do not identify the entity on whose behalf Fjord, Barkley, or Below were actually working.

Plaintiffs attach a copy of an agreement between BTU State Line, LLC, and State Line Energy, LLC, to develop a five-parcel site, with three parcels located in Indiana. Plaintiffs argue that the agreement is sufficient to create a prima facie case of jurisdiction over BTU State Line. Defendants argue that the agreement is insufficient to provide evidence of the continuous and systematic contacts that are necessary for general jurisdiction, nor do Plaintiffs' injuries arise out of that agreement.

Plaintiffs argue that the overlapping ownership and operational control of the BTU Defendants creates an independent basis for jurisdiction over BTU Solutions DE. State Line Energy, LLC, has a single member: BTU State Line, LLC. BTU State Line, LLC, also has a single member: BTU Solutions DE, LLC. The president of BTU Solutions DE, LLC, Jared Rossi, is also

6

manager of all three BTU Defendants, and BTU Solutions, LLC, and BTU Solutions DE, LLC, have the same three members: Johnny Fjord, Joseph Grealish, and Jared Rossi.

Although typically "courts presume that a parent and a subsidiary are institutionally independent when determining whether a subsidiary's contacts with the forum may justify assertion of personal jurisdiction over the parent," that presumption is overcome where "a parent utilizes its subsidiary in such a way that an agency relationship can be perceived" as well as "where the parent has greater control over the subsidiary than normally associated with common ownership and directorship or where the subsidiary is merely an empty shell." *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F. Supp. 1255, 1261-62 (S.D. Ind. 1997) (quotation and citations omitted) (treating multiple corporations as a single entity for the purposes of determining jurisdiction where the corporations had the same phone number and the same individuals acting as directors and either president or vice president of all the corporations); *see also Birnberg v. Milk St. Residential Assoc Ltd. P'ship*, 02 C 0978, 2003 WL 151929, at *11-12 (N.D. Ill. Jan. 21, 2003) (finding that ownership in shell companies gave an ownership in real property to and therefore personal jurisdiction over the parent companies where there was significant overlap in ownership, executives, directors, officers, and managers between a number of corporation and LLC entities).

Defendants do not describe in any detail the organizational structure of any of the BTU Defendants. They argue that Plaintiffs have not "shown with clear evidence that BTU Solutions DE, LLC's corporate existence is simply a formality" or that another entity over which the Court has jurisdiction has such a high degree of control over BTU Solutions DE, LLC that it would be appropriate for there to be jurisdiction over BTU Solutions DE.

Especially since any inconsistencies in the evidentiary presentations are to be resolved in

7

favor of Plaintiffs, Plaintiffs have presented a prima facie case that "BTU Solutions" did business in Indiana at the State Line Energy Plant and that Plaintiffs injuries resulted from that work. Despite Defendants' contentions to the contrary, it is apparent from the brief that Plaintiffs are using the moniker "BTU Solutions" therein to refer to BTU Solutions, LLC. What is not so apparent is the identity of the entity referred to as "BTU Solutions" by its purported employees and on their business correspondence and whether it is the same entity as BTU Solutions, LLC, or whether it is another entity that is not a party to this suit. Plaintiffs have also argued that the BTU Defendants are significantly intertwined. Defendants argue that Plaintiffs have failed to come forward with sufficient evidence to disregard the independence of the separate entities; however, there has been no discovery in this case that would give Plaintiffs access to that evidence. *See, e.g., Cox v. Sherman Capital LLC*, 1:12-CV-01654-TWP, 2013 WL 2897884, at *2 (S.D. Ind. June 13, 2013) ("Defendants also argue that Plaintiffs have not made the prima facie showing necessary to demonstrate that an alter-ego theory of veil-piercing discovery is appropriate. . . . Without the answers to these questions regarding Defendants' ownership interest in and involvement with [the related Defendant], Plaintiffs argue, it is impossible to adequately respond to Defendants' Motion to Dismiss, and the Court agrees. A defendant, while withholding the chicken, cannot demand a plaintiff to produce its egg."). Plaintiffs have requested discovery to obtain additional information in support of its jurisdictional contentions. The Court will allow limited discovery on the issue of whether there is personal jurisdiction over any or all of the BTU Defendants in Indiana.

Defendants have requested that the Court exert oversight over any discovery that is granted. Plaintiffs are hereby cautioned of the need to keep their discovery requests limited in scope. The undersigned Magistrate Judge will, by separate Order, set a scheduling order for the limited

discovery process.

## II. Motion to Dismiss for Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678-79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Seventh Circuit Court of Appeals has explained that "[t]he complaint must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930,

9

935 (7th Cir. 2012) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir.2008)) (quotation marks omitted). Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. In order "[t]o meet this plausibility standard, the complaint must supply enough fact to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Indep. Trust Corp.*, 665 F.3d at 934-35 (quoting *Twombly*, 550 U.S. at 556) (quotation marks omitted).

Defendant moves to dismiss all of Plaintiffs claims. The Court will consider each in turn.

A. <u>Breach of Express Warranties</u>

Defendants argue that the Complaint does not state a claim for express warranty because there was no creation of an express warranty, since the property was sold "as is" and the contract expressly disclaimed all warranties. Plaintiffs argue that the descriptions of the equipment in the online auction created an express warranty, and that because these express warranties cannot be read consistently with the disclaimers in the purchase contract, the disclaimers are made inoperative.

In this case, the descriptions of the goods were found on the auction website. Each description included a reference to the terms and conditions of the sale and, in bold, a reminder that a "bid constitutes acceptance of these terms." The terms and conditions expressly disclaimed all warranties and stated that the items were sold "as is." In addition, the terms and conditions section stated, in bolded font, that "[d]escriptions have been prepared for guide purposes only and shall not be relied upon by the Purchaser for accuracy or completeness. Purchasers shall be deemed to have relied entirely upon their own inspections and investigations." Compl. Ex. 1 ¶ 10. Plaintiffs read and relied upon these terms and conditions before bidding, and Defendants argue that there could

therefore be no express warranty created. However, Plaintiffs allege that there were additional negotiations after the auction, including negotiations over the invoice and additional negotiations with Fjord at the State Line Energy plant that resulted in further refinement of the agreement.

Under Indiana law, "any description of goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Ind. Code. § 26-1-2-313(1)(b). As the Seventh Circuit Court of Appeals explained, describing Indiana law,"[t]he buyer has the burden of establishing that both parties understood and agreed to the same thing, before an express warranty can be proven. That means that if both parties did not rely on a certain assertion or opinion to be a part of the deal, no express warranty was created." *Taurus Holding Co. of Am., Inc. v. Thompson*, No. 97-1590, 129 F.3d 1268, 1997 U.S. App. LEXIS 33339, at *24 (7th Cir. Nov. 17, 1997) (citing *Richards v. Goera Boat and Motors. Inc.*, 384 N.E.2d 1084 (Ind. App. 1979) (abrogated in part on other grounds)); *see also Revealed Water Prods., Inc. v. Arrowhead Plastic Eng'g, Inc.*, No. IP99-0069-C-T/G, 2000 WL 1469571, at *7 (S.D. Ind. Sept. 29, 2000) ("[I]n order for the seller's assurances to constitute an express warranty under the statute, the assurance must constitute a promise which was part of the basis of the purchase agreement.") (quoting *Carpetland U.S.A. v. Payne*, 536 N.E.2d 306, 308 (Ind. Ct. App. 1989)).

Defendants argue that because the written contract disclaimed all warranties, no express warranties were created by the descriptions of the property. Plaintiffs argue that the specific and detailed statements and representations of the equipment, including written descriptions and photos on the auction website as well as oral representations by Fjord, created express warranties because they were part of the basis of the bargain between the parties. Plaintiffs have sufficiently alleged that they relied upon the written, pictorial, and oral descriptions provided by Defendants, and that

11

these statements became part of the basis of the bargain between the parties. *See, e.g., Royal Bus. Machs., Inc. v. Lorraine Corp.*, 633 F.2d 34, 44 n.7 (7th Cir. 1980) (describing "[t]he requirement that a statement be part of the basis of the bargain in order to constitute an express warranty" as a "reliance requirement" that is "intertwined with the initial determination as to whether given language may constitute an express warranty since affirmations, promises and descriptions tend to become a part of the basis of the bargain") (quotation and citations omitted).

In addition, Plaintiffs argue that because the express warranties cannot be read consistently with the disclaimers, the disclaimers are rendered inoperative.

Pursuant to the Indiana Code, "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but . . . negation or limitation is inoperative to the extent that such construction is unreasonable." Ind. Code § 26-1-2-316(1). Accordingly, "[i]f an express warranty and a disclaimer of an express warranty exist in the same sale, an irreconcilable conflict emerges. If it is unreasonable or impossible to construe the language of an express warranty and the language of a disclaimer as consistent, the disclaimer becomes inoperative." *Carpetland*, 536 N.E.2d at 309 (citing *Woodruff v. Clark Cnty Farm Bureau Coop. Ass'n*, 286 N.E.2d 188, 200 (Ind. Ct. App. 1972) (other citations omitted); *see also* Indiana Comment, Burns Ind. Code Ann. § 26-1-2-316(1) ("If an express warranty arises from a *specific* affirmation of fact or promise, or a *detailed* description of the goods, it seems reasonable to ignore a *general* disclaimer of express warranties."). An oral assertion of a warranty, if inconsistent with the disclaimer, can be sufficient to render the disclaimer inoperative. *See Carpetland*, 536 N.E.2d at 309; *Woodruff*, 286 N.E.2d at 200.

Plaintiffs have sufficiently pled facts that, if true, indicate both the existence of an express warranty and inconsistencies between that warranty and the disclaimers that could make the disclaimers inoperative.

B.  Indiana Crime Victim's Relief Act

Plaintiffs allege that they suffered pecuniary loss as a result of Defendants' deception, theft, and conversion, in violation of Indiana Code. The Indiana Crime Victim's Relief Act (ICVRA) provides for civil recovery for pecuniary loss for treble damages, costs, and attorney's fee for damages arising from certain torts or criminal conduct. Ind. Code. § 34-24-3-1; *State Grp. Indus. (USA) Ltd. v. Murphy & Assocs. Indus. Servs., Inc.*, 878 N.E.2d 475, 478 (Ind. Ct. App. 2007). "In order to establish a viable claim, a plaintiff must show a violation of one of the specific code sections and that such violation caused the loss suffered by the plaintiff." *McLemore v. McLemore*, 827 N.E.2d 1135, 1144 (Ind. Ct. App. 2005).

　　　　*1.　Theft and Conversion*

Defendants argue that Plaintiffs' allegations of theft and conversion are impermissibly conclusory. Plaintiffs allege that "BTU knowingly or intentionally exerted unauthorized control over . . . Exciters and Copper Wire with the intent to deprive the Wabash Joint Venture of its value and use," by refusing to allow the Wabash Joint Venture to take control of the exciters and by removing the copper wire that connected the generators to the exciters. Compl. ¶ 116. Under the Indiana Code, "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion," Ind. Code § 35-43-4-3(a), and "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft." Ind. Code § 35-43-4-2(a).

13

Plaintiffs have sufficiently stated a claim for recovery under the ICVRA for theft and conversion.

2.  *Deception*

Defendants argue that because Plaintiffs agreed to rely on their investigation of the property, agreeing to purchase the property "as is," and disclaiming reliance on any description of the property, they cannot recover for deception under Indiana's Crime Victims Relief Act. Plaintiffs argue that reliance is not required under the statute for a claim of deception, and that Defendants' disclaimers do not insulate them from liability.

It is not apparent that Indiana ever allows parties to contract away from liability for future intentional torts or criminal conduct. *See State Grp*, 878 N.E.2d at 478 ("Although we have found no Indiana decision indicating that a party may not contract against liability for intentional tortuous acts, this rule has a general consensus among our sister states.") (listing cases). In this case, as Plaintiffs argue, the disclaimers relied on by Defendants are certainly not explicit enough to contract away that liability. Like the indemnification clause in *State Group Industries*, the disclaimers Defendants refer to do not explicitly "refer[] to criminal or fraudulent conduct on the part of [the defendant]," nor do they include a "clear statement that would give [the plaintiff] notice of the harsh burden that complete indemnification imposes." *Id*. at 481 (quoting *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 480 (Ind. Ct. App. 2000)).

A person commits deception in violation of the Indiana Code if he "sells, offers, or displays for sale or delivers less than the represented quantity of any commodity" or "disseminates to the public an advertisement that the person knows is false, misleading, or deceptive, with intent to promote the purchase or sale of property or the acceptance of employment." Ind. Code §§ 35-45-5-3(a)(4)(B) & (a)(9). Plaintiffs' allegations that BTU "offered for sale less than the represented

quality of equipment . . . on Hilco's website of the goods to be auctioned, which BTU provided to Hilco" and "disseminated an advertisement about the equipment to be auctioned that BTU knew was false, misleading, or deceptive," with specific details about the alleged misrepresentations, Compl. ¶¶ 107-109, are sufficient to state the basis of a claim under Indiana's deception statute.

Defendants also argue that Plaintiff's ICVRA claims are subject to the specificity requirements of Federal Rule of Civil Procedure 9(b). As described below, Plaintiffs have sufficiently complied with Rule 9(b).

### C. Fraud in the Inducement

Defendants argue that Plaintiffs' fraud claims should be dismissed both because of the disclaimers that were part of the written agreement and because the Plaintiffs' allegations are not pled with sufficient particularity. The Court will consider each argument in turn.

#### *1. Disclaimers*

Fraudulent inducement occurs when a party, through fraudulent misrepresentations, induces another to enter into a contract. *Lighting Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002). The elements of fraud in the inducement are "(1) a material misrepresentation of past or existing fact which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused injury to the complaining party." *Tru-Cal, Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 44-45 (Ind. Ct. App. 2009) (quoting *Bilimoia Computer Sys., LLC v. Am. Online, Inc.,* 829 N.E.2d 150, 155 (Ind. Ct. App. 2005)).

Plaintiffs argue that Defendants made knowing misrepresentations about the items in the auction, that Plaintiffs relied upon the misrepresentations and were injured by them. Defendants

argue that the disclaimers in the auction's terms and conditions preclude any claim for fraud in the inducement.

Defendants rely on a single case for their argument, *Circle Centre Development Co., v. Y/G Indiana, L.P.*, 762 N.E. 2d 176 (Ind. Ct. App. 2002). In *Circle Centre*, the court considered a written landlord/tenant contract that included an integration clause. The integration clause included a statement that the "[t]enant acknowledges that it has independently investigated the potential for the success of its operations . . . and has not relied upon any inducements or representations on the part of Landlord or Landlord's representatives other than those contained in the Lease." *Id*. at 178. The court, considering Indiana law regarding integration clauses, held that the tenant could "not, as a matter of law, claim fraud in the inducement after having expressly disclaimed in the lease itself any reliance on [the landlord]'s oral representations." *Id*. at 180 (Ind. Ct. App. 2002).

Defendants argue that the request in the auction's terms and conditions that participants inspect items before bidding and the statement that "[p]urchasers shall be deemed to have relied entirely upon their own inspections and investigations," Compl. Ex. 1 ¶ 10, should likewise bar Plaintiffs in this case from being able to bring a claim for fraud in the inducement. However, as the *Circle Centre* court explained, a cause of action for fraudulent inducement can be maintained even in a case with a written contract including an integration clause if "the fraud . . . induced or produced the execution of the [contract] disclaimer or contributed to it as a cause." 762 N.E. 2d at 180. This is not a situation like that the *Circle Centre* court was trying to prevent where "[t]he plaintiff made a representation in the contract that it was not relying on specific representations not embodied in the contract, while, it now asserts, it was in fact relying on such oral representations." *Id*. (quoting *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 59 (N.Y. 1959)). In this case, there is no

16

bargained-for written contract that purports to integrate the entirety of the agreement between the parties. Plaintiffs allege that the fraud was part of the auction agreement itself in the form of misrepresentations on the auction web page, and that it was the fraud that induced them to participate in the auction and thereby enter into the contract in the first place. The disclaimer language produced by Defendants as part of the auction's terms and conditions does not preclude Plaintiffs from bringing a claim for fraud in the inducement when it is the written auction documents themselves that Plaintiffs allege include the misrepresentations.

### 2. *Particularity*

Defendants also argue that the fraud claims must be dismissed because Plaintiffs cannot lump all the wrongdoers together, but must specify which defendant was involved in what specific fraudulent activity.

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Seventh Circuit has explained that to fulfill these dictates, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud – 'the first paragraph of any newspaper story.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). However, "the requisite information – what gets included in that first paragraph – may vary on the facts of a given case," *Id*. (citations omitted), and "while [the court] require[s] a plaintiff claiming fraud to fill in a fairly specific picture of the allegations in her complaint, [it] 'remain[s] sensitive to information asymmetries that may prevent a plaintiff from offering more detail.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (quoting *Pirelli*, 631 F. 3d at 443). Accordingly, "[i]t is

17

enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Lusby*, 570 F.3d at 854-55.

Plaintiffs argue that because of the intertwined nature of the Defendants' relationships and corporate structure, Plaintiffs are unable to determine which Defendant made each of the alleged fraudulent representations. Plaintiffs have laid out, in detail, the specific content of each of the alleged fraudulent representations. Plaintiffs fail to identify which individual Defendant made each of the representations, but, as described above, Plaintiffs do not have access to information about the interrelationship between Defendants. The Court concludes that, given the circumstances and the information asymmetries in this case, Plaintiffs have pled fraud in sufficient detail to avoid "costly discovery and public obloquy."

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **DENY** the Defendants BTU State Line LLC's, BTU Solutions, LLC's, BTU Solutions DE LLC's, and State Line Energy, LLC's Motion to Dismiss Plaintiffs' Complaint [DE 15]: **DENYING** the motion to dismiss for failure to state a claim and **DENYING without prejudice and with leave to refile** the motion to dismiss for lack of personal jurisdiction; and **RECOMMENDS** that the District Court **GRANT** Plaintiffs request to conduct discovery on the question of personal jurisdiction.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902,

904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989).

SO ORDERED this 13th day of March, 2014.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record