**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| WABASH POWER EQUIPMENT, CO., and | ) | |
| NICKELSON INDUSTRIAL SERVICE, INC., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:13-CV-202-TLS |
| | ) | |
| BTU STATE LINE, LLC, | ) | |
| BTU SOLUTIONS DE, LLC, and | ) | |
| STATE LINE ENERGY, LLC, | ) | |
| | ) | |
|     Defendants. | ) | |

**OPINION AND ORDER**

The Plaintiffs have sued three entities they believe are responsible for the harm they incurred in connection with purchasing equipment from a decommissioned power plant in Hammond, Indiana. The Plaintiffs maintain that the auction website for the equipment provided detailed descriptions regarding the amount and thickness of the metal tubing for four condensers, and that these descriptions created express warranties that were the essence of the transaction. After the Plaintiffs purchased the condensers at a price they set based on the scrap value of the described metal, they discovered that the descriptions were inaccurate, and that the condensers were worth considerably less than the condensers advertised on the auction website.

The Plaintiffs seek summary judgment on their claim that the Defendants breached express warranties in connection with the sale of the four condensers. The Plaintiffs request that the Court enter partial summary judgment in their favor in the amount of $1,410,392.23 on Count I of their Complaint, which is the difference between the value of the condensers as described and their actual value.

**STATEMENT OF FACTS**

Wabash Power Equipment Company and Nickelson Industrial Services, Inc., (the Plaintiffs) formed a joint venture to purchase items that were going to be auctioned from the decommissioned State Line Energy Plant. Before the auction, which was being run by Hilco Industrial, LLC (Hilco), the Plaintiffs received a mailer announcing Hilco's online auction of the Plant equipment. Hilco's website provided detailed descriptions of the available equipment.

The Plaintiffs purchased several pieces of equipment in the auction, including two Ingersoll-Rand condensers and two Worthington condensers. The Plaintiffs bid on these items to recover the inside metal to sell as scrap. The Ingersoll-Rand Condensers were described as containing 16,140 metal tubes that were 30' long, had a 7/8" outside diameter, were 0.049" thick, and were made of admiralty metal. The online materials described the Worthington condensers as having 8,354 metal tubes that were 46' long, with a 1" outside diameter, and were 0.049" thick. According to the description, 61 of these tubes were made of stainless steel and the rest were made of admiralty metal. The Plaintiffs read these descriptions before bidding on the equipment and relied on these descriptions to set their bid price.

The Plaintiffs bid on and eventually purchased the two Ingersoll-Rand condensers and the two Worthington condensers. The Plaintiffs received and signed invoices for the condensers that repeated the auction website's description of the condensers.

When the Plaintiffs cut into the condensers to begin dismantling them, they discovered that the condensers did not match the descriptions. Each Ingersoll-Rand condenser contained only 8,070 tubes rather than the advertised 16,140. In addition, the tubes were made of stainless steel, not admiralty metal. When the Plaintiffs began scrapping the condensers, admiralty metal

could be sold for about $2.38 per pound, but stainless steel garnered only $0.77–$.0.80 per

pound. Additionally, the tubes were not 0.049" thick. The tubes in the Worthington condensers

was also less than the 0.049" thickness described.

The description of the condensers the Plaintiffs' relied upon was accompanied by an

instruction to "see <u>complete terms and conditions of sale</u> before bidding. **Your bid constitutes**

**acceptance of these terms.**" (ECF No. 61-2 (emphasis in original).) Among the written terms

and conditions of the auction was that all items were sold "as is," there were "no guarantees or

warranties whatsoever" and that the buyer should inspect items before bidding. The following

paragraph was included in the auction materials.

> **All sales are final, on an "As Is", "In Place", "With All Faults" basis with no conditions or warranties whether expressed, implied, statutory or otherwise, including without limitation, warranties or conditions as to title, description, fitness for purpose, quantity, quality, merchantability, state, condition, location or otherwise. Please inspect all items before bidding. Preview and inspection dates will be published online at www.hilcoind.com/auctions. All advertising, lot catalogs, or any other source of Information provided by Auctioneer is subject to additions, deletions and prior sale. No sale shall be Invalidated and the Auctioneer shall have no liability for a misdescription of any article or lot whether contained in a catalog, advertisement or otherwise. Descriptions have been prepared for guide purposes only and shall not be relied upon by the Purchaser for accuracy or completeness. Purchasers shall be deemed to have relied entirely upon their own inspections and investigations.**

A separate paragraph stated:

> There shall be no guarantees or warranties, expressed or implied, statutory or
> otherwise of any nature whatsoever in respect of the Lots offered at the auction.
> Each and every Lot will be sold "As Is." Specifically, but without limitation,
> Auctioneer makes no representation or warranty that any of the Lots:
> > 1. (a) conform to any standard in respect of safety, pollution or
> > hazardous material or to any standard or requirement of any
> > applicable authority, law or regulation, or
> > 2. (b) are fit for any particular purpose, or
> > 3. (c) are merchantable or financeable, or

4. (d) are of any particular age, year of manufacture, model, make or condition.

## ANALYSIS

This Court will only grant summary judgment if all of the admissible submissions indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(a). To prevail on its motion for summary judgment, the Plaintiffs must illustrate through citations to materials in the record that no genuine issue of material fact exists as to the elements of their breach of express warranty claim. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (stating that when the "movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim").

To prevail on a breach of warranty claim, a plaintiff must show the existence of a warranty, a breach of that warranty, and that the breach was the proximate cause of the plaintiff's loss. *Irmscher Suppliers, Inc. v. Schuler*, 909 N.E.2d 1040, 1048 (Ind. Ct. App. 2009). The Plaintiffs claim that the Defendants' description of the condensers was an express warranty that the goods would be as described. Under Indiana law, "any description of goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Ind. Code. § 26-1-2-313(1)(b). Indiana law requires that, "in order for the seller's assurances to constitute an express warranty under the statute, the assurance must constitute a promise which was part of the basis of the purchase agreement." *Carpetland U.S.A. v. Payne*,

4

536 N.E.2d 306, 308 (Ind. Ct. App. 1989) (citing *Art Hills, Inc. v. Heckler*, 457 N.E.2d 242, 245 (Ind. Ct. App. 1983); *see also Prairie Prod., Inc. v. Agchem Div.-Pennwalt Corp.*, 514 N.E.2d 1299, 1303 (Ind. Ct. App. 1987) ("Under Indiana law, the seller's representation rises to the level of an express warranty only if it becomes part of the basis of the bargain.")

The Defendants assert that the Plaintiffs have not established that any of the Defendants, either individually or collectively, made an affirmation of fact to the Plaintiffs. They argue that even if Hilco made a binding representation as the auctioneer, there remains a genuine issue of material fact regarding whether Hilco was acting on any of the Defendants' behalf. The descriptions the Plaintiffs point to as establishing the creation of an express warranty were posted on the auction website. But the Plaintiffs, at this stage in the proceedings, cannot link these descriptions to any specific Defendant. Right below the description is the statement "Provided By State Line Energy, LLC." (ECF No. 61-2 at 4, 6.) This is an out of court statement made by Hilco, which cannot be used for the truth of the matter asserted—that the description was provided by State Line Energy. Fed. R. Evid. 801.

The Plaintiffs also provide an Exclusive Auction and Sales Agreement between State Line Energy, LLC, and Hilco, but it is not authenticated and the Court has no basis to conclude that it is what the Plaintiffs state. *See* Fed. R. Evid. 901(a) ("the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is"). Because the Plaintiff does not provide an affidavit from the author of the report or custodian of the document concerning its authenticity, it is not admissible. *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006); *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003). Even if the contract were properly authenticated and the Court considered it for purposes

of ruling on the Plaintiffs' Motion, it does not establish that any of the Defendants made the statements at issue. It only shows which entity hired Hilco. While this evidence, along with additional evidence surrounding Hilco's involvement and the auction may lead to reasonable inferences about which entity is responsible for the descriptions, these inferences are not appropriate at this stage. "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Additionally, "[a] party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance." *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662 (7th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325–26 (1986)).

The connections, if any, between State Line, LLC, BTU Solutions DE, LLC, and State Line Energy are not clear from the current submissions. While the Plaintiffs maintain that "BTU owned the State Line Energy Plant" (Pls.' Brief 2, ECF No. 61), they do not designate any evidence in support of this assertion. *See* Fed. R. Fed. P. 56(c) (stating that a party must support an assertion of fact by "citing to particular parts of materials in the record"). The remainder of the Plaintiffs' summary judgment brief refers to the BTU Defendants collectively. BTU Solutions DE, LLC's Answer to the Plaintiffs' Complaint denies the allegation that "[i]n September 2012, BTU offered for sale various equipment from the inactive State Line Energy electric plant in Hammond, Indiana, through BTU's agent, auctioneer Hilco." (Answer ¶ 2, ECF

No. 56.) BTU State Line, LLC, makes the same denial in its Answer. (Answer ¶ 2, ECF No. 57.) The Court finds that, apart from the question of whether there was a description of the condensers that was made part of the basis of the Plaintiffs' bargain for the purchase of those condensers, there is a material issue of fact as to who is responsible for any such description.

The Defendants' alternative argument against the entry of partial summary judgment is that any warranties were properly disclaimed. Each description of the goods for auction included a reference to the terms and conditions of the sale and, in bold, a reminder that a "bid constitutes acceptance of these terms." The terms and conditions expressly disclaimed all warranties and stated that the items were sold "as is." In addition, the terms and conditions section stated, in bold, that "[d]escriptions have been prepared for guide purposes only and shall not be relied upon by the Purchaser for accuracy or completeness. Purchasers shall be deemed to have relied entirely upon their own inspections and investigations."

Viewing the written materials in isolation, the Court cannot conclude as a matter of law that there was an express warranty. It is genuinely disputed whether the description of the goods contained on the auction website and invoice were sufficient to create an express warranty that became a part of the basis of the bargain where the auction materials also clearly stated that descriptions had been prepared for "guide purposes only" and that a purchaser should not rely upon such descriptions "for accuracy or completeness." Rather, purchasers were warned that they would "be deemed to have relied entirely upon their own inspections and investigations." *Cf. Dirico v. Fuqua Chrysler-Plymouth, Inc.*, 562 N.E.2d 756, 758 (Ind. Ct. App. 1990) (finding that a statement that a pre-owned vehicle's odometer reading reflected the actual mileage to the best of the seller's knowledge was not an express warranty concerning the actual mileage).

7

Construing the designated evidence most favorably to the Defendants, the Court cannot conclude that the record is so one-sided as to rule out the prospect that the Defendants did not expressly warrant the accuracy of the description. The Court is aware that, according to the Plaintiffs' Complaint, the Plaintiffs and Hilco continued to negotiate the terms of the sale after the Plaintiffs received the invoice (Compl. ¶ 39), but these allegations are not included in the Plaintiffs' summary judgment submissions, so the Court cannot consider whether additional descriptions became a part of the basis of the bargain and created an express warranty that the condensers would conform to that description.

A trier of fact should determine whether all of the circumstances surrounding the sale of the condensers give rise to an express warranty and, if so, which Defendant or Defendants made the warranty.

## CONCLUSION

For the reasons stated above, the Court DENIES the Plaintiffs' Motion for Partial Summary Judgment [ECF No. 60].

SO ORDERED on June 24, 2015.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

8